Opinion delivered May 8, 1889.

## No. 6399.

## Chance Kelly *v.* The State.

1. **Murder—Mutual Combat—Charge of the Court.**—The evidence in this case shows conclusively that the conflict was provoked and brought on by either the defendant or the deceased, and that the other, in resisting the attack, acted upon real or apparent necessity. *Held* that such proof excludes the idea of mutual combat, and in submitting that issue to the jury the charge of the trial court was erroneous.

2. **Same—Self Defense—Case Approved.**—Article 572 of the Penal Code provides that "homicide is justifiable in the protection of the person or property against any other unlawful and violent attack besides those mentioned in the preceding article (murder, maiming, disfiguring or castration), and in such cases all other means must be resorted to for the prevention of the injury, and the killing must take place while the person killed is in the very act of making such unlawful and violent attack." In submitting this law to the jury, under the facts of this case, the trial court erred. See the opinion for a special charge on justifiable homicide, requested by the defense in lieu of the above charge, the refusal of which, in view of the proof, was error; and note the approval on this subject of Ormond's case, 24 Texas Ct. App., 496.

APPEAL from the District Court of Freestone. Tried below before T. J. Gibson, Esq., Special Judge.

The indictment charged the appellant with the murder of Neil Washington, in Freestone county, Texas, on the twenty-fifth of December, 1887. The trial resulted in a conviction for manslaughter, a term of two years in the penitentiary being the penalty assessed.

Mack Washington, the brother of the deceased, testified, for the State, that the defendant, deceased and himself were among a large number of negroes who, on Christmas day, 1887, assembled at the house of Aaron Haines, in Freestone county, to partake of egg-nog. During the festivities the parties present got into a good natured scuffle, and a crowd led by the defendant attempted to expel from the house the crowd to which the witness and deceased belonged. The play was rough, but good humor apparently prevailed. After the scuffle defendant stepped out of the house and exclaimed two or three times that he would bet five dollars on his ability to throw down any of the parties present. He finally threw two dollars and a half on the gallery and repeated his challenge. Witness placed three dollars on the gallery and took up the half dollar placed there by defendant, and said: "My brother William can throw you down." Defendant took up his money and said: "I don't want to wrestle with William; Neil is the damned son-of-a-bitch I am after." Replying to this challenge, deceased said that he would not wrestle for five dollars, but would bet twenty-five dollars that he could throw the defendant. Defendant replied that he did not have that much money, but that he would borrow two dollars and a half from one of the boys, to make five dollars, which, together with his horse, he would bet to throw deceased. He then stepped off and led up his horse which he said he would entrust to William Washington, the brother of the deceased, to abide the result of the struggle. Before deceased could prepare himself for the wrestle, defendant ran up, seized him by the waist and exclaimed: "I can throw your damned ass to the ground every throw." About that time Boozie Kelly, defendant's brother, interfered, pushed the parties aside, and said: "Boys, don't fuss." Defendant then walked to the rear of deceased and without warning suddenly drew his knife, rushed upon deceased, exclaimed: "God damn your soul to hell!" reached over Boozy Kelly and stabbed deceased in the head. Deceased exclaimed: "Get out of the way; Chance is cutting me," and started to run, when defendant cut him again, in the arm. Deceased ran off, pursued by defendant a short distance.

Defendant soon returned to the crowd, but deceased did not come back. Defendant pulled his knife, opened it and put it in his pocket open, when he started after his horse. The deceased had no knife in his hand at any time during the scuffle or difficulty, so far as the witness saw or knew, nor did he, so far as the witness knew, cut the defendant. Deceased was cut in three places—twice in the arm and once in the head.

James Grant and Austin Gaines were the other witnesses for the State. Their account of the transaction differed, immaterially however, as to details of the wager, from that of the first witness, but they concurred in the statement that about the time the parties were apparently about ready to wrestle, the defendant, without warning, rushed upon deceased with an open knife and cut him twice. They also concurred in the statement that defendant opened his knife, and put it into his pocket open at or before the moment he delivered the horse to William Washington.

Tom Haines was the first witness for the defense. He described the friendly scuffle in the house about as the witnesses for the State had done, and then testified that, after the scuffle, and when the parties had gone outside of the house, Ed Haines offered to bet two dollars and a half that defendant could throw any man in the crowd. Deceased said, speaking to defendant: "By God, you can't throw me down for fifty dollars." Defendant said: "Bud, we were not talking to you, but I can throw you down for thirty dollars. I will put up my horse for twenty-five dollars; I have two dollars and a half, and will borrow two and a half from Ed., and that will make thirty dollars, that I will bet I can throw you down." Defendant then brought his horse from a fence near by, and put the reins in William Washington's hands. The two men then approached each other, when deceased said to defendant: "God d—n you, you won't do anything you say you can do." Defendant replied: "Well, I can throw you down." Deceased said: "You are a God d—n liar; you will do nothing you say you will do." About that time Boozie Kelly got between the disputants and said: "Boys, wrestle if you are going to, but don't get mad." Defendant replied to Boozie: "I am not mad, but I can throw him down." Deceased reiterated: "You are a God d—n liar," etc., thrust his hand into his pocket, drew and opened his knife, advanced and slashed at the defendant over Boozie's shoulder, and cut defendant in the neck. At that time Boozie was push--

ing defendant back, when defendant said to him: "Turn me loose, Booz.; don't you see that God d—n nigger cutting me with his knife?" Defendant jerked loose from Boozie, thrust his hand in his pocket and drew his knife. Just as he got it open witness slapped it out of his hand. He stooped and picked it up, and as he was straightening up the deceased rushed at him with his knife in a striking position, and defendant struck with his knife as deceased came on him, cutting deceased in the temple, and on the arm. Defendant at no time advanced upon deceased, nor did he at any time curse deceased or call him a damned son of a bitch, or say that he, deceased, was the damned son of a bitch he was after. He did not draw his knife until after deceased cut him on the neck.

Boozie Kelly, Primus Grant and Chaney Hillery, witnesses for the defense, testified substantially as did the witness Tom Haines. Two or more witnesses testified to threats against the defendant uttered by deceased at various times prior to the difficulty.

No brief for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. It was excepted to the charge of the court to the jury that the instructions contained therein with regard to mutual combat were uncalled for by any evidence in the case, and were calculated to confuse and mislead the jury. "From the facts we think it clear that one or the other of the parties provoked or brought on the conflict, and that the one or the other not chargeable with this acted upon real or apparent necessity; and this excludes the idea of a mutual combat." (Roseborough v. The State, 21 Texas Ct. App., 672.) There was no proposition to nor understanding between the parties that they were to fight. On the contrary, the proposition and understanding was that they were to wrestle for a sum of money, or upon a bet as to which could throw the other down. In preparing for this contest one or the other got mad, drew his knife and assaulted the other with it. The evidence is conflicting as to which party commenced the fight. During the fight both parties were cut with a knife. Under the facts of the case it was error to charge the law of mutual combat.

As to defendant's right of self defense, the court instructed

the jury in the language of article 572, of the Penal Code, which requires a resort to all other means to prevent the threatened injury, before there is a resort to homicide, in order to render it justifiable. This instruction was excepted to, and defendant's counsel requested a special instruction in lieu thereof, as follows: "If you believe from the testimony in the case that there was an unlawful attack made upon defendant by deceased, and that the attack was of such a nature that the defendant had reasonable grounds to believe that he was in immediate and impending danger of being murdered or of receiving serious bodily injury by his assailant, he is justifiable in killing his assailant when (if?) at the time of the killing some act has been done by the deceased showing evidently an intention to commit one of such offenses; and the defendant in such case may act promptly, without resorting to other means before killing his assailant, because in such case the law presumes the party's safety depends upon his prompt action in killing his assailant; and if you so believe from the evidence you will find the defendant not guilty;" which instruction the court refused to give. The instruction was correct as a proposition of law, was in our opinion applicable to the facts in evidence, and should have been given as part of the law of the case. (Penal Code, art. 570; Willson's Crim. Stats., sec. 970.)

According to the testimony of defendant's witnesses, he was first assaulted by deceased and was cut upon the neck with a knife before he drew and used his knife, and that deceased was still assaulting him when he, defendant, inflicted the cuts upon deceased with his knife. Under the facts it was error to charge the rule of law announced in article 572 of the Penal Code. (Ormand v. The State, 24 Texas Ct. App., 496.)

For errors in the charge of the court, the judgment is reversed and the cause remanded.

*Reversed and remanded.*